UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSHUA R.L. WOOLERY,<br><br>       Plaintiff,<br><br> v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>       Defendant. | Case No. 2:15-cv-01780-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

  Plaintiff has brought this matter for judicial review of defendant's denial of his application for supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed, and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

  On January 10, 2013, plaintiff applied for SSI benefits, alleging he became disabled beginning September 1, 1999. Dkt. 9, Administrative Record (AR), 19. That application was denied on initial administrative review and on reconsideration. *Id.* At a hearing held before an Administrative Law Judge (ALJ) plaintiff appeared and testified, as did a vocational expert. AR 33-62.

ORDER - 1

In a decision dated July 25, 2014, the ALJ found that plaintiff could perform jobs existing in significant numbers in the national economy and therefore that he was not disabled. AR 19-28. The Appeals Council denied plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner, which plaintiff then appealed to this Court. AR 1; 20 C.F.R. § 416.1481; Dkt. 3.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred:

(1) in evaluating the opinion evidence from school psychologist Nanette Johnson, Brent J. Oneal, Ph.D., W. Michael Rogers, Psy.D., Benjamin B. Skorpinski, LMHCA, CDPT, Matthew Comrie, Psy.D., and Dan Donahue, Ph.D.;

(2) in discounting plaintiff's credibility;

(3) in evaluating the lay witness evidence in the record;

(4) in assessing plaintiff's residual functional capacity (RFC); and

(5) in finding plaintiff could perform his past relevant work.

Plaintiff also argues additional medical evidence submitted to the Appeals Council shows the ALJ's decision is not supported by substantial evidence. For the reasons set forth below, the Court agrees the ALJ erred with respect to the opinions of Ms. Johnson, Dr. Oneal, and Dr. Donahue, plaintiff's credibility determination, and the lay witness evidence. Because of those errors, the ALJ also erred in assessing plaintiff's RFC and in finding he could perform jobs existing in significant numbers in the national economy.[1] Also for the reasons set forth below, however, the Court finds remand for further administrative proceedings, rather than an award of benefits, is warranted.

---

[1] Since this matter is being remanded for the reasons noted above, the Court finds it unnecessary to address the issue of whether the additional evidence submitted to the Appeals Council shows that the ALJ's decision is not supported by substantial evidence, and therefore declines to do so.

ORDER - 2

# DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I.    The ALJ's Evaluation of the Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and

ORDER - 3

conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

ORDER - 4

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

A.   Ms. Johnson

The record contains an April 2006 student support services evaluation report from Ms. Johnson, in which she opines:

> Overall, aggressive behaviors that include argumentative behavior, defiance, and/or threatening of others are concerns that are reported by the all [sic] of the teachers participating in this evaluation. Other behaviors that are of concern by all teachers are: learning problems, attention problems, and withdrawal. Adaptive skills appear to be at risk, which include: social skills, adaptability, leadership, and study skills. . . . Joshua's diagnosis of [pervasive development disorder], . . . and his borderline cognitive skills most certainly impact his executive functioning skills. Joshua needs intervention to help with social skills, time management, organization, and anger management in order for him to be successful in the school setting.

AR 255. Plaintiff argues the ALJ erred in failing to address this opinion evidence in his decision. The Court agrees. Even if Ms. Johnson is not a licensed or certified psychologist, this constitutes significant probative evidence of plaintiff's ability to function the ALJ should have considered. *Vincent*, 739 F.2d at 1394-95; *Cotter*, 642 F.2d at 706-07; *Garfield*, 732 F.2d at 610; *see also Tobeler v. Colvin*, 749 F.3d 830, 834 (9th Cir. 2014) ("[L]ay witness testimony as to a claimant's

ORDER - 5

symptoms or how an impairment affects ability to work is competent evidence that cannot be disregarded without comment.").

B.     Dr. Oneal

With respect to the medical opinion evidence from Dr. Oneal, the ALJ found:

> In July of 2011, Brent Oneal, Ph.D., opined that the claimant may have difficulty in fast-paced multi-task environments, given his especially slow speed of processing and limited interpersonal problem-solving skills. In addition, Dr. Oneal opined that the claimant had limited social connectedness and problems with written expression. Some weight is given to this opinion as the claimant's educational records indicated that the claimant had difficulty with complex tasks; however, the record indicated that the claimant was generally friendly and was able to graduate from high school meeting the State standard in writing, which tends to undermine a standalone diagnosis for disorder of written expression. Accordingly, only some weight is given to this opinion.

AR 26. The Court again agrees with plaintiff that the ALJ failed to provide valid reasons for not fully crediting Dr. Oneal's opinion. First, while the record may indicate plaintiff was generally friendly (AR 272, 284), it also suggests his social functioning difficulties were more pervasive than the ALJ acknowledges. For example, as noted above argumentative behavior, defiance and threatening others were concerns regarding aggressive behavior shared by all of the teachers who participated in the evaluation of plaintiff performed by Ms. Johnson. AR 255.

Another school psychological assessment from January 2009, noted that plaintiff is "very defensive and inappropriately reacts to others when he feels that he is being targeted, even though a person may be actually helping him out," and that "[a]lthough he is very polite he lacks other social skills such as personal space." AR 229. In addition, during a mental health evaluation in June 2014, he was observed to have a lack of empathy and a sense of appropriate boundaries, a rising frustration level, a diminished ability to initiate or sustain a conversation, a marked impairment in use of multiple nonverbal behaviors, and some repetitive patterns of behavior, as

ORDER - 6

well as "inflexible adherence to specific, nonfunctional routines and rituals." AR 294, 296.

In regard to plaintiff's ability to graduate from high school reflecting on the diagnosis of a written expression disorder, plaintiff's testimony indicates he needed significant academic help, and even with that help he graduated a year late. AR 40-43, 47-48. The record, furthermore, suggests plaintiff's writing level once again is not as high as the ALJ deemed it to be. For example, Ms. Johnson noted that plaintiff's overall written expression score was in the low average range for his age, that his performance on a writing samples subtest was in the "very low range" for his age, and that with respect to the latter "his sentences lacked content and were incomplete." AR 252-53. A follow-up evaluation in 2009, revealed that plaintiff had "trouble with comprehension of subject matter," and that he was below level in writing, as well as in reading and math. AR 229. Thus, neither of the reasons the ALJ provided for discounting Dr. Oneal's opinion are supported by substantial evidence.

C.   Dr. Donahue

Lastly, plaintiff challenges the ALJ's reliance on the opinion of Dr. Donahue, a state agency psychologist who the ALJ stated opined that plaintiff: would have no significant problems sustaining a job where he consistently engaged in repetitive tasks appropriately taught to him; could have brief and superficial interactions in environments where simple routine tasks are performed independently; and could adapt to simple changes associated with simple routine tasks but would need work goals and expectations set and explained to him. AR 26. But as plaintiff notes, Dr. Donahue's opinion is not contained in the record. Thus, the Court is without any basis for determining whether the ALJ's evaluation of that opinion was proper. Accordingly, here too the ALJ erred.

ORDER - 7

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

ORDER - 8

The ALJ discounted plaintiff's credibility for three reasons. First, he found plaintiff's allegations regarding the severity of his limitations were unsupported by the medical evidence in the record. AR 24-25. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. *Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). As discussed above, though, the ALJ did not adequately evaluate a significant portion of the opinion evidence concerning plaintiff's mental functioning. This, therefore, was not a proper basis for discounting plaintiff's credibility.

The second reason the ALJ gave for finding plaintiff to be less than fully credible was:

> The claimant reported that he is able to perform adequate self-care, prepare meals, clean, grocery shop and manage his money independently (Exhibit 6F/4). The claimant was also noted to be friendly, eager to please and be able to maintain some friendships (Exhibit 1F; 8F). These activities indicate a higher level of function than that alleged by the claimant.

AR 25. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." *Id.* Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Smolen*, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." *Id.* In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. Under the second ground in *Orn*, a claimant's activities of daily living can "contradict his [or her] other testimony." 495 F.3d at 639.

ORDER - 9

As discussed above, plaintiff's difficulties in social functioning appear more severe than the ALJ found. In addition, the record fails to show that plaintiff engaged in the other activities of daily living the ALJ noted for a substantial part of the day, or that they were performed in a manner indicative of being transferrable to a work setting. AR 168-71, 187-91. Nor do they necessarily contradict plaintiff's other testimony. The ALJ, therefore, did not provide valid reasons for discounting plaintiff's credibility.

III.    The ALJ's Evaluation of the Lay Witness Evidence

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

The record contains a written statement from plaintiff's father setting forth his observations of plaintiff's symptoms and limitations. AR 187-94. With respect to that statement, the ALJ found:

> Mr. Woolery reported that the claimant was immature for his age, has difficulty focusing and is easily frustrated. However, Mr. Woolery indicated that the claimant is able to perform chores such as laundry, dishes, cleaning, mowing and preparing simple meals. These activities are consistent with an individual that is capable of simple routine tasks.

AR. 27. Plaintiff argues the ALJ did not fairly characterize Mr. Woolery's comments regarding plaintiff's ability to function. The Court agrees. Mr. Woolery's statement indicates plaintiff has

ORDER - 10

symptoms and limitations far more significant that recognized by the ALJ. Indeed, in regard to the activities the ALJ lists, Mr. Woolery noted that plaintiff needed daily reminders to perform them, and even then he "still does the jobs partially." AR 189. Accordingly, the ALJ improperly evaluated the lay witness evidence from plaintiff's father.

IV.     The ALJ's RFC Assessment

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* A claimant's RFC assessment is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found plaintiff had the RFC:

**to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform simple routine tasks. The claimant cannot have contact with the public. The claimant can have few, if any, changes in the work routine or work setting.**

ORDER - 11

AR 23 (emphasis in the original). But because as discussed above the ALJ erred in evaluating the medical and lay witness evidence in the record, and in discounting plaintiff's credibility, the ALJ's RFC assessment cannot be said to completely and accurately describe all of plaintiff's functional limitations. Accordingly, the ALJ erred here as well.

V.      The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

The ALJ found that plaintiff could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered at the hearing in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as plaintiff. AR 27-28. But because as discussed above the ALJ erred in assessing plaintiff's RFC, the hypothetical question the ALJ posed to the vocational expert – and thus that expert's testimony and the ALJ's reliance thereon – cannot be said to be supported by

ORDER - 12

substantial evidence or free of error.

Plaintiff argues that when the vocational expert was posed certain additional limitations that are more severe than those adopted by the ALJ, he testified that plaintiff would be unable to sustain competitive employment. AR 56-57. It is far from clear, however, that those limitations are supported by the substantial evidence in the record. For the same reasons the Court declines to find the ALJ was required to credit as true the improperly rejected evidence.

VI.     Remand for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain in regard to the medical evidence and lay witness evidence, and plaintiff's credibility, as well as his RFC and ability to perform other jobs existing in significant numbers in

ORDER - 13

the national economy, remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

DATED this 14th day of September, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 14